# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Alex Soular, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Northern Tier Energy LP; Northern Tier Energy LLC; Northern Tier Retail Holdings LLC; Northern Tier Retail LLC d/b/a SuperAmerica,<br><br>Defendants. | Civil No. 15-CV-556 (SRN/LIB)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

J. Gordon Rudd, Jr., David M. Cialkowski, and June P. Hoidal, Zimmerman Reed, PLLP, 1100 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, for Plaintiff.

Shawn M. Raiter, Larson King, LLP, 2800 Wells Fargo Place, 300 East Seventh Street, St. Paul, Minnesota 55101, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss and to Strike Class Allegations [Doc. No. 13] and Plaintiff's Motion to Strike or, in the Alternative to Submit a Sur-Reply [Doc. No. 21]. For the reasons stated below, Defendants' Motion is denied, and Plaintiff's Motion is denied as moot.

## II.   BACKGROUND

Plaintiff Alex Soular brings this lawsuit against Defendants Northern Tier Energy LP, Northern Tier Energy LLC, Northern Tier Retail Holdings LLC, and Northern Tier

Retail LLC d/b/a/ SuperAmerica, which operate SuperAmerica convenience stores in Minnesota and Wisconsin, for allegedly contacting Plaintiff on his cell phone in violation of the Telephone Consumer Protection Act ("TCPA"). (Compl. [Doc. No. 1] ¶¶ 4–5, 16–18.) More specifically, Plaintiff claims that he received numerous promotional Short Message Service ("SMS") messages, or text messages, from Defendants' SMS short code "55123," even though he had never provided prior express written consent to receive those messages. (Id. ¶¶ 20–21, 24–26, 28.) For example, on April 15, 2014, Plaintiff allegedly received the following text message from that short code:

> SuperAmerica says: Time for lunch/dinner? SuperFuel your appetite with any RollerGrill item & SuperSipper for $2! All month long, only @ SuperAmerica.

(Id. ¶ 25.) Attached as Exhibit A to the Complaint are screenshots of at least twenty-seven additional messages.

According to Plaintiff, Defendants sent similar messages "en masse to a list of thousands of wireless telephone numbers using a computerized automatic telephone dialing system." (Id. ¶ 27.) Plaintiff claims that this system, also known as an "auto-dialer," "had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers." (Id. ¶ 29.) Plaintiff further alleges that these text calls were made "simultaneously" and "without human intervention." (Id. ¶ 45.)

Plaintiff filed this lawsuit in February 2015, asserting one cause of action for violation of the TCPA, 47 U.S.C. § 227, on behalf of himself and the following class:

> All persons in the United States and its Territories who received one or more text message advertisements, without having provided prior express consent, from or on behalf of Defendants.

(Id. ¶ 30; see id. ¶¶ 39–48.) He claims that he and the class members have suffered damages in the form of service charges from their wireless carriers, diminished cell phone battery life, wasted data storage capacity, aggravation, and intrusion upon privacy. (See id. ¶¶ 3, 48.) On March 13, 2015, Defendants moved to dismiss the Complaint and to strike the class allegations. The matter was heard on May 15.

### III.  DISCUSSION

#### A.  Defendants' Motion to Dismiss

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, see Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. See Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records, Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The U.S. Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), clarified that this Rule does not require that a complaint contain "detailed factual allegations," but it does require that it contain facts with enough specificity "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In other words, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Id. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Under the TCPA, it is unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Defendants argue that Plaintiff's TCPA claim fails because: (1) Plaintiff's allegations that Defendants used an automatic telephone dialing system to send the text messages at issue are conclusory and unsupported by the facts; and (2) Plaintiff consented to receiving the text messages. (See Defs.' Mem. in Supp. of Rule 12 Mot. to Dismiss and to Strike Class Allegations [Doc. No. 15] ("Defs.' Mem.") at 12–18; Defs.' Reply Mem. in Supp. of Rule 12 Mot. to Dismiss and to Strike Class Allegations [Doc. No. 20] ("Defs.' Reply") at 4–13.)

### 1. Automatic telephone dialing system

One element of a TCPA claim is that the defendant made the call at issue using an "automatic telephone dialing system," which is defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Defendants argue that Plaintiff has failed to plead facts to support his assertion that Defendants used an automatic telephone dialing system ("ATDS") to generate and send the text messages and, instead, merely recites the statutory language as part of his claim. (Defs.' Mem. at 13–14.) For example, Defendants point to the following language in Plaintiff's Complaint:

> The text messages sent to Plaintiff and the Class members were sent using equipment that had the capacity to store telephone numbers retrieved from Defendants' database and to dial such numbers. The equipment can also be programmed to generate and dial random or sequential numbers. By using such equipment, Defendants were able to effectively send text messages simultaneously to thousands of wireless telephone numbers en masse without human intervention.

(Compl. ¶ 45; see id. ¶¶ 27, 29; Defs.' Mem. at 13–14.) Relying on the affidavit of Steven Morris, Defendant Northern Tier Retail LLC's Director of Marketing, Sales Strategy and Planning, Defendants further argue that Plaintiff cannot plead facts to support his claim because Defendants' system does not have the capacity to store or generate numbers using a random or sequential number generator, or to send text messages to those numbers, without human intervention. (See id. at 4–5, 15–18; Defs.' Reply at 9–13.)

In opposition, Plaintiff argues that an allegation that an ATDS was used to make the calls is sufficient at this stage of the litigation, but that even if it were not, Plaintiff has

alleged numerous additional facts from which the use of such a system can be inferred—
e.g., the timeframe in which the messages were sent, the fact that the messages were sent
"en masse" as part of a promotional campaign, and that the messages were all sent from the
same short code. (Pl.'s Mem. in Opp. to Defs.' Rule 12 Mot. to Dismiss and to Strike Class
Allegations [Doc. No. 18] ("Pl.'s Opp.") at 16–18 (citing Compl. ¶¶ 2, 19, 24–25, 27, 29,
45).) Plaintiff also asserts that whether Defendants' system satisfies the TCPA definition of
an ATDS is a factual question that is not properly resolved on a motion to dismiss and that
the Court cannot consider Defendants' affidavit because it is outside the scope of the
pleadings. (Id. at 18–23.)

The Court agrees with Plaintiff. First, Plaintiff's allegation that Defendants used an
ATDS to send the text messages at issue is sufficient at this stage of the litigation, when no
discovery has been completed. See, e.g., Hashw v. Dep't Stores Nat'l Bank, 986 F. Supp.
2d 1058, 1061 (D. Minn. 2013) (holding that an allegation that an ATDS was used to make
the calls at issue was sufficient to state a claim for relief under the TCPA); Iniguez v. CBE
Grp., 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013) (same). As one court noted, "[w]hile
additional factual details about the machines might be helpful, further facts are not required
to move beyond the pleading stage." In re Jiffy Lube Int'l, Inc. v. Text Spam Litig., 847 F.
Supp. 2d 1253, 1260 (S.D. Cal. 2012).

Second, as Plaintiff points out, there are additional facts alleged in the Complaint
which indicate the use of an ATDS, such as the generic content of the message, the fact that
the messages were sent en masse from Defendants' SMS short code, and the fact that the
messages were promotional in nature. See, e.g., Hashw, 986 F. Supp. 2d at 1061 (holding

that the plaintiff's allegations that he received 112 calls over a short period of time from the same telephone number, and that the calls were related to telemarketing, were sufficient at the pleading stage to draw an inference that an ATDS was used); Kazemi v. Payless Shoesource Inc., No. C 09-5142 MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) (finding that "[the] plaintiff's description of the received messages as being formatted in SMS short code licensed to defendants, scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS" and was "sufficient to meet federal pleading requirements"); Abbas v. Selling Source, LLC, No. 09 CV 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (same).

Third, the cases relied upon by Defendants for the proposition that the presence of human intervention precludes Plaintiff's claim do not mandate a different result. Four of the five cases were decided on summary judgment—i.e., after the plaintiffs had the opportunity to conduct discovery into the nature of the defendants' calling systems—and so are inapposite on this Motion to Dismiss. See Glauser v. GroupMe, Inc., No. C 11-2584 PJH, 2015 WL 475111, at *7 (N.D. Cal. Feb. 4, 2015) (granting summary judgment on the plaintiff's TCPA claim because the plaintiff failed to raise a triable issue of fact regarding the capacity of the defendant's texting equipment to dial numbers without human intervention); Dominguez v. Yahoo!, Inc., 8 F. Supp. 3d 637, 644 (E.D. Pa. 2014) (granting summary judgment on the plaintiff's TCPA claim because the plaintiff did not offer any evidence showing that the defendant's system had the capacity to randomly or sequentially generate telephone numbers); Marks v. Crunch San Diego, LLC, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) (granting summary judgment on the plaintiff's TCPA claim because the

7

undisputed facts demonstrated that the defendant's platform lacked a random or sequential number generator and instead required the use of human intervention); Gragg v. Orange Cab Co., 995 F. Supp. 2d 1189, 1194 (W.D. Wash. 2014) (granting partial summary judgment on the plaintiff's TCPA claim because the evidence demonstrated that the defendants' system relied on human intervention to transmit notifications).  Although the fifth case was decided on a motion to dismiss, the court determined that "[the plaintiff's] affirmative allegations of the need for human intervention by [a user of the defendant's system] when . . . sending an SMS invitation preclude[d] the need for discovery to address whether [the plaintiff] ha[d] alleged the use of an ATDS."  McKenna v. WhisperText, Case No. 5:14-cv-00424-PSG, 2015 WL 428728, at *4 (N.D. Cal. Jan. 30, 2015) (emphasis added).  Although Defendants here claim that "[Plaintiff] and the people he hopes to represent only received texts because they first sent text messages to SuperAmerica," (Defs.' Reply at 13), there are no such allegations in Plaintiff's Complaint.

Finally, the Court cannot properly consider Defendants' proffered affidavit at this stage of the proceedings because it is outside the scope of the pleadings.  Thus, although it is possible that discovery will demonstrate that Defendants did not employ an ATDS to send the text messages at issue, the allegations in the Complaint are sufficient to support Plaintiff's claim to the contrary at this stage of the litigation.

        **2.**      **Consent**

As noted above, a person does not violate the TCPA by making a call with an ATDS if the person has the "prior express consent" of the recipient.  47 U.S.C. § 227(b)(1)(A).  Defendants assert that such consent is given when an individual voluntarily provides his

telephone number to the calling party.  (See Defs.' Reply at 4–8.)  Accordingly, Defendants argue, the TCPA does not apply in this case because "[Plaintiff] initiated contact with SuperAmerica in September 2013 by sending a text message from his cell phone" and has since "sent several additional texts to SuperAmerica and never expressed a lack of consent to receive text messages."  (Id. at 4.)  In support of their argument, Defendants again rely on the affidavit of Mr. Morris, as well as the lack of any allegation in the Complaint that Plaintiff objected to receiving text messages from Defendants.  (See id. at 4–6.)

Plaintiff takes exception to this argument, asserting that Defendants improperly raised it for the first time in their reply brief and that, in any event, it is contrary to current law stating that only prior express "written" consent is sufficient. (Pl.'s Mem. of Law in Supp. of Motion to Strike or, in the Alternative, to Submit a Sur-Reply [Doc. No. 23] ("Pl.'s Mot. to Strike Mem.") at 1–3.)  Accordingly, Plaintiff moved to have that portion of Defendants' reply brief stricken or, in the alternative, for permission to file a sur-reply brief addressing the issue of consent.  (Id. at 3.)

The Court again finds that, at this stage of the proceedings, Defendants have failed to identify a deficiency in Plaintiff's pleadings that warrants dismissal of his TCPA claim. First, as Plaintiff's counsel pointed out at the hearing, Defendants' arguments regarding consent are all premised upon their factual assertion that Plaintiff sent a text message to Defendants in September 2013.  However, that assertion is based on the affidavit of Mr. Morris—not the Complaint—and, as discussed above, the Court cannot properly consider that affidavit in this Motion to Dismiss.

9

Second, Plaintiff's Complaint contains no allegations from which the fact of consent can be inferred. On the contrary, Plaintiff repeatedly alleges that "[a]t no time did [he] provide prior express written consent to receive text message marketing from Defendants." (Compl. ¶ 28; see id. ¶¶ 5, 46.) Such allegations are sufficient to withstand a motion to dismiss. See Carnes v. IndyMac Mortg. Servs., Civ. No. 10-3005 (RHK/SRN), 2010 WL 5276987, at *5 (D. Minn. Dec. 17, 2010) ("Nothing in [the plaintiff's] Complaint . . . suggests that . . . she ever consented to receiving calls on her cellular phone; in fact, she pleaded that she did not so consent. . . . Because nothing in the pleadings establishes that [the plaintiff] consented, this argument fails to provide grounds for dismissal under Rule 12(b)(6).").

The cases relied upon by Defendants are not to the contrary. Again, several of those cases are inapposite because they were decided on summary judgment, with the benefit of discovery and a factual record. See Taylor v. Universal Auto Group I, Inc., No. C 13-5245 KLS, 2014 WL 2987395, at *4–5 (W.D. Wash. July 1, 2014) (dismissing the plaintiff's TCPA claim on summary judgment because the evidence showed that the plaintiff had confirmed his cell phone number on various service orders and had authorized the defendant to use that phone number); Gray v. Morgan Drexen, Inc., No. 2:13-cv-83-FTM-29DNF, 2014 WL 2573227, at *3 (M.D. Fla. June 9, 2014) ("[G]iven the evidence establishing that [the plaintiff] provided her cellular phone number to [the defendant], [the plaintiff] has not shown that no material issues of fact exist regarding whether she provided [the defendant] express consent to be contacted."); Van Patten v. Vertical Fitness Grp., LLC, 22 F. Supp. 3d 1069, 1071, 1078 (S.D. Cal. 2014) (dismissing the plaintiff's TCPA claim on summary

10

judgment where the plaintiff provided his phone number on a gym application card and did not put any restrictions on its use); Elkins v. Medco Health Solutions, Inc., No. 4:12CV2141 TIA, 2014 WL 1663406, at *7 (E.D. Mo. Apr. 25, 2014) (dismissing the plaintiff's TCPA claim on summary judgment where the evidence demonstrated that the plaintiff provided her phone number when she enrolled in a medical benefits plan and signed a form stating that her personal information could be used to tell her about health-related services); Baird v. Sabre Inc., 995 F. Supp. 2d 1100, 1107 (C.D. Cal. 2014) (dismissing the plaintiff's TCPA claim on summary judgment because the "[d]efendant's evidence establishe[d] that [the plaintiff] provided her cellphone number . . . voluntarily"); Roberts v. PayPal, Inc., No. C 12-0622 PJH, 2013 WL 2384242, at *4 (N.D. Cal. May 30, 2013) (dismissing the plaintiff's TCPA claim on summary judgment where the plaintiff provided his cell phone number to the defendant in order to receive information regarding the defendant's services).

Although the remaining cases cited by Defendants were decided on motions to dismiss or for judgment on the pleadings, the plaintiffs' own allegations in those cases established that the requisite "prior express consent" had been provided. See Ebling v. ClearSpring Loan Servs., Inc., Civ. No. 15-25 (RHK/BRT), 2015 WL 3439161, at *1, *3 (D. Minn. Apr. 14, 2015) (finding that the plaintiff could not establish a TCPA violation where she pleaded that she informed the defendant that it could contact her on her cell phone); Lamont v. Furniture North, LLC, Civ. No. 14-cv-036-LM, 2014 WL 1453750, at *1, *3 (D.N.H. Apr. 15, 2014) (dismissing the plaintiff's TCPA claim because she conceded that she gave the defendant her cellular telephone number); Steinhoff v. Star Tribune Media Co., No. 13-cv-1750 (SRN/JSM), 2014 WL 1207804, at *1, *3 (D. Minn. Mar. 24, 2014)

11

(granting the defendant's motion for judgment on the pleadings as to the plaintiff's TCPA claim where the subscription order form, which was held to be embraced by the pleadings, demonstrated that the plaintiff had provided the defendant with her cellular telephone number in the course of signing up for a newspaper subscription); Murphy v. DCI Biologicals Orlando, LLC, No. 6:12-cv-1459-Orl-36KRS, 2013 WL 6865772, at *5 (M.D. Fla. Dec. 31, 2013) (dismissing the plaintiff's TCPA claim where "the face of [his] Amended Complaint clearly contains the allegation that he voluntarily provided [the defendant] with his cellular telephone number"); Emanuel v. Los Angeles Lakers, Inc., No. CV 12-9936-GW(SHx), 2013 WL 1719035, at *3 (C.D. Cal. Apr. 18, 2013) (dismissing the plaintiff's TCPA claim where, in his complaint, "[he] admit[ted] that he voluntarily sent a text to the [defendant] seeking to display the contents of that message on the scoreboard"); Pinkard v. Wal-Mart Stores, Inc., No. 3:12-cv-02902-CLS, 2012 WL 5511039, at *4 (N.D. Ala. Nov. 9, 2012) (finding that the "plaintiff pled herself out of court" where "the face of plaintiff's complaint admit[ted] that she gave defendant her cellular telephone number"); Ibey v. Taco Bell Corp., No. 12-CV-0583-H (WVG), 2012 WL 2401972, at *1, *3 (S.D. Cal. June 18, 2012) (dismissing the plaintiff's TCPA claim where the complaint alleged that the plaintiff voluntarily sent a text message to the defendant). Again, the allegations in this case state the opposite—i.e., that prior express consent was not provided.

Third, the parties hotly dispute the type of consent that Defendants were required to obtain prior to sending any text messages to Plaintiff. In a 1992 Order implementing the TCPA, the Federal Communications Commission ("FCC") addressed the issue of consent and noted that "persons who knowingly release their phone numbers have in effect given

12

their invitation or permission to be called at the number which they have given, absent instructions to the contrary." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992). The cases cited above relied upon this 1992 FCC Order in finding that a plaintiff who had voluntarily provided his or her phone number to the defendant had expressly consented to being contacted and, therefore, did not have a viable TCPA claim. See Taylor, 2014 WL 2987395, at *4–5; Gray, 2014 WL 2573227, at *2–3; Van Patten, 22 F. Supp. 3d at 1073; Elkins, 2014 WL 1663406, at *6; Baird, 995 F. Supp. 2d at 1106; Roberts, 2013 WL 2384242, at *3–4; Ebling, 2015 WL 3439161, at *3; Lamont, 2014 WL 1453750, at *2–3; Steinhoff, 2014 WL 1207804, at *3; Murphy, 2013 WL 6865772, at *5; Emanuel, 2013 WL 1719035, at *2; Pinkard, 2012 WL 5511039, at *4.

However, in 2012, the FCC issued a new rule requiring "prior express written consent," which means:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8) (emphasis added). As further defined by the FCC:

(i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

13

> > (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> > (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

Id. In the 2012 Order, the FCC stated that "[o]nce our written consent rules become effective . . . an entity will no longer be able to rely on non-written forms of express consent to make autodialed or prerecorded voice telemarketing calls, and thus could be liable for making such calls absent prior written consent." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1857 ¶ 68 (Feb. 15, 2012). This 2012 FCC Order took effect on October 16, 2013. See Pinkard, 2012 WL 5511039, at *4. While Plaintiff argues that this new rule should apply in this case, Defendants assert that the 1992 FCC Order remains in effect because Plaintiff's first communication with Defendants occurred in September 2013—prior to the 2012 FCC Order's effective date. (See Pl.'s Mot. to Strike Mem. at 3; Defs.' Mem. in Opp. to Mot. to Strike [Doc. No. 26] at 3.)

To further complicate matters, the FCC issued a Declaratory Ruling and Order on July 10, 2015, in which it acknowledged that its 2012 Order could have caused confusion. In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 2015 WL 4387780, at *35, ¶ 101 (July 10, 2015). In particular, the FCC found that its cautionary statement regarding liability after the effective date of the new rule "could have reasonably been interpreted to mean that written consent obtained prior to the [new] rule's effective date would remain valid even if it does not satisfy the [new] rule." Id. Therefore, the FCC allowed the petitioners in the matter before it to continue to rely on the written consents that

they had obtained from consumers prior to October 16, 2013—even though they were not in compliance with the new written consent requirements—for a short grace period. Id. ¶ 102.

While the type of consent Defendants were required to obtain may be a legal issue, it depends upon the resolution of several fact issues. For example, in order to determine whether the 1992 or 2012 FCC Order applies, it must be determined whether Plaintiff did, in fact, initiate contact with SuperAmerica in September 2013, and what the content and context of that contact were. And, if the 2012 FCC Order applies, it appears that, at the very least, Defendants must have obtained some form of prior express written consent. Whether Plaintiff's purported September 2013 text message constitutes express written consent would likely depend upon the content of the message, as well as the content of the advertisement to which he allegedly was responding. These are issues that cannot properly be resolved on this Motion because they are not evident on the face of the Complaint. Accordingly, Defendants' Motion to Dismiss Plaintiff's Complaint is denied and, because the Court declines to resolve the issue of consent at this time, Plaintiff's Motion to Strike or, in the Alternative to Submit a Sur-Reply, is denied as moot.

### B. Defendants' Motion to Strike Class Allegations

Defendants also seek to strike Plaintiff's class allegations, pursuant to Rules 12(f) and 23 of the Federal Rules of Civil Procedure, on the theory that Plaintiff has defined an impermissible "fail-safe" class in which membership depends on an individual first having a valid claim.[1] (See Defs.' Mem. at 6–8.) In particular, Defendants assert that two liability

---

[1] Defendants also state that the majority of Plaintiff's claims are based on "information and belief," rather than on his personal knowledge, and, therefore, fail to

issues would have to be determined before an individual could know whether he or she is a member of the class—i.e., whether the text message came from an ATDS and whether the individual provided the requisite consent. (See id. at 8–10.) According to Defendants, district courts in this Circuit reject such fail-safe class definitions. (Id. at 6, 10; Defs.' Reply at 14–15.)

In response, Plaintiff argues that Defendants' Motion should be denied because motions to strike class allegations are rarely granted and, in any event, Plaintiff has not alleged a fail-safe class. (Pl.'s Opp. at 6–8.) As for the latter point, Plaintiff asserts that consent is an affirmative defense, common proof of which will be available in Defendants' business records, and that the proposed class definition makes no reference to Defendants' use of an ATDS. (Id. at 8–9.) Plaintiff further contends that even if fail-safe classes are impermissible and Plaintiff has alleged a fail-safe class, the proper time for the Court to address the issue is at class certification. (Id. at 10.)

The Court finds that it would be premature to dismiss Plaintiff's class allegations at this stage of the litigation. First, the Eighth Circuit has not ruled on the propriety of fail-safe class definitions. See Giesmann v. Am. Home Patient, Inc., No. 4:14CV1538 RLW, 2015 WL 3548803, at *6 n.4 (E.D. Mo. June 8, 2015). Thus, it is not clear that a fail-safe definition is per se impermissible. Moreover, although Defendants argue repeatedly that district courts in this Circuit have recognized that such definitions are improper, they cite to only one case from this Circuit in which a motion to strike was granted on that basis:

---

meet federal pleading requirements. (Defs.' Mem. at 6.) The Court declines to address this argument, however, because Defendants failed to elaborate any further.

Lindsay Transmission, LLC v. Office Depot, Inc., No. 4:12-CV-221 (CEJ), 2013 WL 275568, at *4–5 (E.D. Mo. Jan. 24, 2013). (See Defs.' Mem. at 8; Defs.' Reply at 14.) Since that opinion was issued, however, another court in that same district declined to strike a purported fail-safe class definition at the pleading stage. See Giesmann, 2015 WL 3548803, at *6.

Second, it does not appear that the proposed class definition is fail-safe. As the court in Lindsay Transmission summarized:

> A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012). Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment. Id.; Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011). "This type of class definition is called a 'fail safe' class because the class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class." Genenbacher v. CenturyTel Fiber Co. II, 244 F.R.D. 485, 488 (C.D.Ill. 2007). . . .

2013 WL 275568, at *4. Here, as Plaintiff notes, the proposed class definition makes no reference to Defendants' use of an ATDS. Accordingly, individuals could qualify as class members even if they do not have a valid claim—i.e., if they received a text message from Defendants that was not sent via an ATDS.

For these reasons, Defendants have not adequately demonstrated that Plaintiff's class definition is improper. Accordingly, in light of the Eighth Circuit's statement that striking allegations is an "extreme measure" that is infrequently granted, Stanbury Law Firm, P.A. v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000), this Court declines to strike Plaintiff's class allegations from the Complaint. A more appropriate remedy for curing Plaintiff's class

17

definition—if it proves necessary—will be to require Plaintiff to amend the definition at the class certification stage. See Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid, on the one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."). Thus, Defendants' Motion to Strike the Class Allegations is denied.

## IV. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Defendants' Motion to Dismiss and to Strike Class Allegations [Doc. No. 13] is **DENIED**; and

2. Plaintiff's Motion to Strike or, in the Alternative to Submit a Sur-Reply [Doc. No. 21] is **DENIED AS MOOT**.

Dated: August 25, 2015           s/Susan Richard Nelson
                                 SUSAN RICHARD NELSON
                                 United States District Judge